## ATLAS LIFE INS. CO. v. STANDFIER.
### No. 4467.

Court of Civil Appeals of Texas. Amarillo.
Sept. 23, 1935.

Rehearing Denied Oct. 21, 1935.

Bean, Duggan & Bean, of Lubbock, for appellant.

McWhorter & Howard, of Lubbock, for appellee.

HALL, Chief Justice.

The appellant insurance company issued its policy for $5,000 on March 8, 1932, upon the life of Mrs. Lula Standfier, the wife of appellee. The policy provided that in the event of her death two-fifths of the amount due should be paid to appellee, her husband, and one-fifth to each of her three children. The wife died on September 23, 1933, at Lubbock, Tex.

The appellee filed suit, alleging that the other named beneficiaries, viz., the children, were not made parties because they were bona fide residents of the state of Oklahoma and beyond the jurisdiction of the court, and that the policy was issued under the laws of the state of Texas. He alleged that notice of death and demand were duly made; that the appellant denied liability, whereby he was forced to employ attorneys to file this suit, and promised to pay them $750, which was a reasonable fee. He prayed for judgment for two-fifths of the policy, viz., $2,000, with interest, $750 attorney's fee, 12 per cent. penalty, and costs of suit.

The appellant answered by plea in abatement, alleging the pendency of a prior action between the appellant and all of the named beneficiaries, including appellee, in the district court of Haskell county, Okl.; that the purpose of said suit was to cancel said policy upon the ground of fraud and misrepresentation as to the state of assured's health. Appellant also alleged the non-joinder of necessary parties plaintiff in the appellee's suit filed in Lubbock county, Tex.

The court overruled the plea in abatement, and the appellant duly excepted.

Appellant then answered by a general demurrer, three special exceptions, the first two of which attacked the appellee's right to recover attorney's fees and 12 per cent. penalty without the allegation of necessary facts to show liability therefor upon the part of appellant. The answer further consisted of a general denial and a special denial of liability for attorney's fees and the 12 per cent. penalty, alleging that at the time application was made for the insurance both appellant and the insured were residents of the state of Oklahoma; that by the terms of such policy it was made payable at the home office of the appellant in Tulsa, Okl.; that it became effective only when it was accepted by an executive officer of the appellant at Tulsa, thereby becoming a contract governed by the laws of the state of Oklahoma, which laws provide that there can be no recovery of attorney's fees or penalties; and that its rights were not subject to the laws of the state of Texas. The appellant further specially answered that before two years had elapsed after the execution of the policy, it instituted suit in Haskell county, Okl., against the appellee herein and the other named beneficiaries to cancel said policy on the ground of fraud; that the other named beneficiaries were personally served with process in Oklahoma, and the appellee was cited by publication according to the laws of Oklahoma and in that way was served in Lubbock county; that thereafter, on August 23, 1934, judgment was rendered in the Oklahoma court in favor of appellant against appellee, canceling the appellee's interest in said policy, and declaring the same null and void, and appellant pleaded said judgment as res judicata. The appellant pleaded that the law of Oklahoma authorized the issuance of citation against a nonresident defendant who is a necessary party to a complete determination of the issues involved, and also pleaded the laws of Oklahoma with reference to such a judgment being final and binding upon the appellee.

It is further alleged that at the time the application for the policy was issued, and contrary to statements contained therein, the insured was afflicted with tuberculosis and had consulted a physician for such ailment, and therefore such answers were false and fraudulent and were made by the assured to procure such insurance; that they were material to the risk and made with the knowledge that appellant would rely thereon, which it did, in issuing the policy; that when it was informed that the insured was suffering from such ailment it gave notice that it would not be bound by such policy and tendered to the insured all premiums theretofore collected, with interest, and prayed cancellation of such policy upon the grounds of such fraud and misrepresentation.

The trial court sustained the appellee's special exceptions to the appellant's defense of res judicata, and overruled its exceptions to the claim for attorney's fees and penalty. The case was submitted to a jury

upon three special issues, which, with the answers, are as follows:

"1. Do you find from the preponderance of the evidence that Mrs. Lula Standfier misrepresented her state of health in her application for insurance under the policy in question?"

Answer: "No."

"2. Do you find by a preponderance of the evidence that when the company accepted the last premium payment on or about March 8, 1933 it then knew the condition of health of Mrs. Standfier on the date the policy was issued to her?"

Answer: "Yes."

"3. What do you find by a preponderance of the evidence is a reasonable attorney's fee in this case?"

Answer: "$625.00."

Based upon the verdict and the undisputed testimony and stipulations, judgment was entered in favor of Fred Standfier against the appellant for $2,985, with 6 per cent. interest thereon from date until paid.

■ The first contention to be considered is that because at the time the application for the policy was executed, and at the time it was issued and delivered, both the insured and appellant were residents of the state of Oklahoma, where said policy was expressly made payable, it was error for the trial court to render judgment for attorney's fees and statutory penalty under the Texas statute, article 4736, as amended by Acts 42nd Leg., c. 91, § 1 (Vernon's Ann. Civ. St. art. 4736), and contrary to the laws of Oklahoma which had been pleaded and proven.

R. S. art. 5054 is: "Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a 'contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed, and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same."

The record shows that the appellant company was doing business as a life insurance company in the state of Texas and within the provisions of article 5054. H. C. Walker, its agent who solicited the appellee for insurance, resided at Paris, Tex. Dr. Robinson, its medical examiner, also was a resident of Texas, and examined Mrs. Standfier in Texas. The policy was delivered in this state, and, under its own provisions, did not become binding until actual delivery and upon payment of the premium. The premium was paid in Texas to Walker, appellant's Texas agent. The policy provides that the premium might be paid to any agent of the company, and it required the assured to state as one of her representations that she had paid to Walker, as agent of the company, $117.35 for which amount the record shows she held the agent's receipt, witnessed by him as soliciting agent.

Article 4736, as amended by the Acts of the 42nd Legislature, (Vernon's Ann. Civ. St. art. 4736), provides: "In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve per cent damages on the amount of such loss together with reasonable attorney fee for the prosecution and collection of such loss. Such attorney fee shall be taxed as a part of the costs in the case. The Court in fixing such fees shall take into consideration all benefits to the insured incident to the prosecution of the suit, accrued and to accrue on account of such policy."

Article 5054 has been construed several times by the higher courts of this state and, too, in cases where the policy provides that in the event of the death of assured settlement shall be made in a state other than Texas, and that the premiums shall be paid elsewhere than in Texas. The courts of Texas, however, have uniformly held that under the facts which we have quoted above and especially as to the delivery of the policy in this state, article 5054 governs the rights of the parties, and this is true even in group insurance. Metropolitan Life Ins. Co. v. Worton (Tex. Civ. App.) 70 S. W. (2d) 216, 217; Metropolitan Life Ins. Co. v. Wann (Tex. Civ. App.) 81 S. W. (2d) 298; Connecticut General Life Ins. Co. v. Dent (Tex. Civ. App.) 84 S. W. (2d) 250.

24 Tex. Jur. p. 17 announces the rule with reference to the delivery of the policy to be as follows: "For the purpose of the general rule, the place where the contract is made is that where the final act is performed which is necessary to its completion

and to make it binding upon both parties. Accordingly, where a policy is not to be in effect·until delivery, its validity is to be determined by the rules of the place in which delivery is made." Nat'l Life & Accident Ins. Co. v. Smith (Tex. Civ. App.) 20 S.W. (2d) 142; American Nat'l Ins. Co. v. Smith (Tex. Civ. App.) 13 S.W.(2d) 720.

■ Appellant's next contention is in the nature of a plea in abatement upon the ground that there has been a prior action instituted, involving the same parties and issues we have in this case. It is alleged that a final judgment has been rendered in the Oklahoma court. The court sustained the appellee's exception to that part of the answer. It seems that the policy had a two-year incontestable clause, and the allegation is that the suit was filed in the Oklahoma court within the two years against all of the beneficiaries in the policy, including the appellee. In sustaining the appellee's exception, the court was probably acting upon the theory that no final judgment had been rendered in Oklahoma, and because of the want of personal service upon appellee in that court, no judgment could be rendered disposing of his interest under the policy.

We think appellant's pleading sufficient to sustain the court's action. It is alleged that appellant was cited by publication. Any judgment rendered in the Oklahoma court must of necessity have been a judgment in rem because of the absence of personal service upon appellee in that jurisdiction. It is well settled that suits instituted merely for the purpose of canceling contractual rights, obligations, or choses in action are personal actions as distinguished from actions in rem. Steger v. Shofner (Tex. Civ. App.) 54 S.W.(2d) 1013, 1016.

It may be admitted that the judgment which attempted to adjudicate the rights of the appellee complies in all respects with the requirements of the Oklahoma statute. Nevertheless, it is a nullity and cannot be pleaded as res judicata in an action filed by appellee in the Texas court, based upon the policy which was not in evidence or produced in court at the time the Oklahoma case was tried. The appellant alleges that the cause of action is still pending in the courts of Oklahoma as to the other named beneficiaries. That suit was filed on the 19th day ·of February, 1934, praying for a cancellation of the policy of insurance against all ·of the beneficiaries. A copy of the petition, made a part of the record in this case, contains this allegation: "All the defendants in said suit except Fred Standfier were duly cited to appear and answer therein as required by the laws of the State of Oklahoma, and the said Fred Standfier was cited by publication, according to the laws of Oklahoma, issued out of said Oklahoma court, and served upon him in Lubbock County, Texas, directing him to appear and answer said suit in Oklahoma."

The appellant also pleaded portions of the Oklahoma statutes, providing that in any action relating to real or personal property in that state, wherein any defendant has or claims an interest therein, such defendant may be cited by publication or nonresident notice, and further provides that in an action against several defendants the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others whenever a several judgment may be proper. The affidavit which was filed in the Oklahoma court as a basis for obtaining service by publication recites: "Affiant further states that said defendant, Fred Standfier, resides out of the State of Oklahoma, and is a non-resident of this State, and that plaintiff (appellant) has been unable, with due diligence, to make service of summons on the said Fred Standfier within the State of Oklahoma. * * * That said defendant has been outside of the State of Oklahoma at all times since the time ·prior to the institution of this suit, and that he has not had any residence therein since the time prior·to the filing of this suit. * * * That the last known address of the defendant, Fred Standfier, was 515 18th Street, Lubbock, Texas."

The purported judgment of the Oklahoma court is designated as a "journal entry," and recites that Fred Standfier was duly served as required by law, and had defaulted, and that the allegations in the petition, so far as they relate to him, must be taken as confessed, and then proceeded to decree a cancellation of the policy as it relates to him.

The courts of Texas uniformly hold that personal judgment rendered on such service is absolutely void and subject to collateral ·attack if the defect appears from the record, and that a judgment canceling a contract executed by a nonresident, rendered on service by publication or notice to serve nonresident defendant, is a nullity. It is said in the case of Steger v. Shofner, supra: "That the courts of a state have no power to cancel obligations owing by its citizens to a nonresident creditor except upon valid

personal service of notice upon the creditor within the limits of the state where the suit is brought is well established in our general jurisprudence."

This court so held in the case of W. T. Rawleigh Co. v. Little, 32 S.W.(2d) 214.

"A former action brought in a court which has no jurisdiction of the subject-matter may not be pleaded as another action pending, and in order for the rule of res judicata to apply there must be a valid, final judgment. This means that the court which rendered judgment must have had jurisdiction. Otherwise the judgment is void and neither binds nor bars nor stops anyone. Such a judgment not be pleaded in bar." 1 Tex. Jur. p. 105; 26 Tex. Jur. pp. 72, 76.

■ In order for a judgment of another state to come within the full faith and credit clause of the Constitution of the United States (article 4, § 1), it must be a final, valid, subsisting judgment, not reversed, vacated, or annuled in the state of its rendition, and a judgment that is still subject to the control of the court in which it was rendered will not support an action here. Walker v. Garland (Tex. Com. App.) 235 S. W. 1078; American Nat'l Bank v. Garland (Tex. Com. App.) 235 S. W. 562; McDaniel v. Belt (Tex. Civ. App.) 54 S.W.(2d) 592.

■ The appellant requested the submission of several issues inquiring whether Mrs. Standfier had any disease of the lungs at the time she made her application for insurance; whether she knew at that time that she had any ailment of the lungs; whether she concealed such fact from the defendant for the fraudulent purpose of procuring the insurance; and whether the defendant would have issued the policy if it had known that she had tuberculosis. The court refused these issues, and appellant assigns error based upon such refusal.

We think the issue and finding of the jury, inquiring whether Mrs. Standfier misrepresented her state of health in her application for insurance under the policy, was the ultimate issue to be decided. The issues requested are evidentiary in their nature, and are comprehended in the issue and answer numbered "1" in the court's charge. We think we can dispose of this contention upon the theory that no suit was filed to cancel the policy until more than two years after its issuance. 24 Tex. Jur. 944, § 193.

R. S. art. 4732, which contains the requisites of a life insurance policy to be issued in Texas, provides (subdivision 3) that the policy, or policy and application, shall constitute the entire contract between the parties, and shall be incontestable not later than two years from its date, except for nonpayment of premiums, and which provision may, or may not, at the option of the company, contain an exception for violations of the conditions of the policy relating to naval and military service in time of war.

The suit filed by appellant in the Oklahoma court, for the purpose of canceling the policy upon the ground of misrepresentation, was not filed until more than two years after the issuance of the policy, and no suit has been filed at all in Texas for that purpose.

■ While the appellant introduced some deposition testimony of doctors in Oklahoma to the effect that they had examined Mrs. Standfier and found symptoms indicating lung trouble in 1929, the record shows that she was carefully examined by the appellant's medical examiner at Paris at the time she applied for insurance; that she was given a complete medical examination; that an independent investigation of her health was made by the company through its authorized examiner; and that the company relied upon the report of its physician. The appellant alleged that some three or four months after delivery of the policy the assured commenced "running a fever," and that about the same time, through its duly authorized agent, they sought to have her again examined with the view of giving her further insurance; that soon thereafter the assistant secretary of appellant, C. H. Menge, and one of its examiners, Dr. L. A. McCombs, a member of defendant's examining committee, called upon assured in an effort to induce her to surrender the policy; that they observed her, talked with her, and saw her then physical condition, and, after consultation between the two, they stated to the plaintiff, in the assured's presence, that they would leave the policy as it was, and were satisfied with the assured as a risk; that thereafter, on or about March 1, 1933, the assured paid the second half of the second year's premium, which payment was accepted by the defendant herein, at which time the defendant had knowledge of the assured's state of health, and that she had moved from Oklahoma to Lubbock, Tex., a distance of approximately 600 miles, in an effort to recover from tuberculosis; and that the defendant thereby waived any and all rights, if any it ever had, to void the

policy. The allegations in substance as above are sustained by the evidence.

The only three questions appearing in the application relating to tuberculosis are as follows:

"5. Have you, during the past year, resided or been intimately associated with any person suffering from tuberculosis? If so, give particulars and precautions taken." Answered "No."

"12. Have you ever suffered from any ailment or disease of the heart or lungs?" Answered "No."

"15. Have there been any cases of insanity, tuberculosis, epilepsy or suicide in your family? If so, give details." Answered "No."

No evidence was introduced which tended to show that the answer to either of said questions was not true.

Dr. Krock testified that he examined Mrs. Standfier in 1930 and gave her a physical, a laboratory, and cystoscopic examination; that he gave her a complete clinical examination in order to determine what, if anything, she was suffering from; that he found no evidence of pulmonary tuberculosis at that time.

The appellee testified that during the year 1930 his wife went to St. Johns Hospital, Fort Smith, Ark., remaining there four days, and was thoroughly examined and received no treatment whatever, and that her health was good at the time of taking out the policy; that she had never complained of having any fever or any other symptom of tuberculosis, and had not suffered from any disease of any character; that the first indication of tuberculosis was in June, 1932. Her son testified that at the time the policy was issued she was in good health, and was running the mercantile business belonging to herself and husband.

The appellant alleged that it had notice in July, 1932, that Mrs. Standfier had consulted a physician and been treated for tuberculosis, and it was shown that thereafter, on March 8, 1933, it accepted the second premium on the policy, presumably with full knowledge and notice of all the facts. This is a complete estoppel.

The appellant's contention that appellee had no right to maintain this suit because of the want of necessary parties is without merit. The appellee's interest in the policy is separable. He alleged that the other beneficiaries were nonresidents of the state and beyond the jurisdiction of the court, that the assured had died in Texas, and he prayed for judgment for his interest in the policy.

In the case of Farrar v. Byars (Tex. Civ. App.) 250 S. W. 1048, 1050, it appears that Farrar qualified as community administrator, executed a bond with Spaulding and Harper as sureties, and thereafter sold the land and other property belonging to the estate, for which he had never accounted to the heirs. Suit was filed against him and his sureties, without making some of the children parties to the suit. It was contended there was a nonjoinder of parties, and that no recovery could be had against the sureties until all the children had been joined as plaintiffs. The court said: "It is true that all of the children of the deceased wife are proper parties to this suit, but are they necessary parties? Their interests in the proceeds of this estate were converted by their father. This interest was several and not joint. The amount due each child from this converted money is fixed by law and the value of neither dependent on the value of the other. If appellants desired to have the other children as parties to this suit so that the rights of all could be determined in one suit, they could have made them parties."

In the instant case there is no adjudication of the rights of appellee's three children. We think this contention is without merit. 47 C. J. 65, par. 135.

In Bailey v. Morgan, 13 Tex. 342, it is said: "Where the new parties are without the jurisdiction of the Court * * * the objection of want of parties will not, in general, be allowed to prevail; for, to require such persons to be made parties, would be equivalent to a dismissal of the suit; and would amount to a denial of justice."

According to First Nat'l Bank in Dallas v. Pierce, 123 Tex. 186, 69 S.W.(2d) 756, 758, necessary parties are "only those persons without whose presence before the court no adjudication of any of the subject matter involved in the litigation can be had." According to this definition, the children of appellee were not necessary parties to an action instituted to recover appellee's interest in the policy.

We find no reversible error, and the judgment is affirmed.